FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 18, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSHUA K.,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | NO: 1:19-CV-3052-RMP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Joshua K.,[1] ECF No. 11, and the Commissioner of Social Security (the "Commissioner"), ECF No. 12. Claimant Joshua sought judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claim for Social Security disability insurance benefits. ECF No. 11 at 3. The Court has reviewed the motions, the administrative record, and is fully informed. For the

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently Plaintiff's first name only, throughout this decision.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

reasons stated below, the Commissioner's motion, **ECF No. 12**, is **granted**, and Claimant's motion, **ECF No. 11**, is **denied**, resulting in a denial of benefits.

## BACKGROUND

Claimant began experiencing severe back pain accompanied by pain in his left leg in 2013. ECF No. 11 at 4 (citing Administrative Record ("AR") 616[2]). He was diagnosed with degenerative disc disease and underwent surgery in March of 2014. *Id*. (citing AR 610). While Claimant experienced some initial improvement in his pain levels after the surgery, he claims that his back pain eventually returned, restricting his ability to perform basic work functions. *See id*. Additionally, Claimant later was diagnosed with bipolar disorder and post-traumatic stress disorder. AR 479.

On May 7, 2015, Claimant filed applications for Title II and Title XVI disability benefits. ECF No. 11 at 3. These claims were denied. *Id.* Claimant subsequently had a hearing before an ALJ, and, on February 5, 2018, the ALJ denied Claimant disability benefits. *Id.* Claimant requested and was denied review by the Appeals Council, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* Claimant now seeks judicial review of the Social Security Administration's disability determination.

---

[2] The Administrative Record ("AR") is filed at ECF No. 8.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

*ALJ's Decision*

**Step One:**  The ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged onset date of June 1, 2014.  AR 29.

**Step Two:**  The ALJ found that Claimant had the following medical impairments: back condition, status post lumbar spine surgery, and depressive disorder.  AR 30.

**Step Three:**  The ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 30 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

**Step Four:**  The ALJ found that Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 4041567(a) and 416.967(a).  AR 32.  The ALJ concluded:

> [Claimant] can lift and carry 10 pounds occasionally and less than 10 pounds frequently.  In an 8-hour day with normal breaks, he can sit for a total of 6 hours, and can walk and/or stand for a total of 2 hours.  He cannot climb ladders, ropes, or scaffolds.  He can occasionally climb ramps and stairs.  He can occasionally stoop, kneel, crouch, and crawl.  He can frequently balance.  He should avoid exposure to extreme cold, vibration, and hazards.  He is limited to simple, routine, repetitive tasks.  He can have only occasional, superficial contact with the public.  He can have superficial contact with coworkers.

AR 30.

The ALJ also concluded, based on the testimony of the vocational expert, that Claimant is unable to perform any past relevant work.  AR 38.

**Step Five:** The ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are a significant number of jobs in the national economy that Plaintiff can perform. AR 38. These jobs include assembler, escort vehicle driver, and toy stuffer. AR 39. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from June 1, 2014, through February 5, 2018, the date of the ALJ's decision. AR. 39.

## LEGAL STANDARD

*Standard of Review*

A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review,

the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

**Sequential Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if the claimant is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, then the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a list of impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, then the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the claimant cannot perform her previous work, the decision maker moves on to the fifth and final step of the process. In the fifth step, the decision maker determines whether the claimant is able to perform other work in the national economy in view of her residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

**1. Did the ALJ err in her rejection of Claimant's symptom testimony?**

**2. Was the ALJ's finding of malingering contrary to agency policy?**

**3. Did the ALJ err in weighing medical opinion testimony?**

## DISCUSSION

I.     **Determining Credibility of Claimant's Testimony**

Claimant argues that the ALJ improperly discredited his testimony regarding the severity of his symptoms. Claimant's argument that the ALJ erred in discounting his symptom testimony is intertwined with his claim that the ALJ acted contrary to agency policy when she made a finding of malingering. Accordingly, the Court will consider both arguments, which constitute the first two issues on appeal, together.

When there is no evidence of malingering on the record, "the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*,

759 F.3d 995, 1014–15 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  However, when there is evidence of malingering in the record, the ALJ need only provide "specific, cogent reasons for the disbelief." *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted)).  The ALJ need not make a specific finding of malingering, as long as affirmative evidence in the record shows malingering.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *see Lynn v. Comm'r of Soc. Sec.*, No. 2:19-cv-0090-TOR, 2019 WL 6717025, at *4 (E.D. Wash. Dec. 10, 2019).  Thus, if affirmative evidence in the record shows malingering, the ALJ may reject the claimant's testimony for specific, cogent reasons.  *See Morgan*, 169 F.3d at 599.

### *Evidence of Malingering*

The parties dispute whether there is evidence of malingering on the record. Accordingly, they dispute the standard that the ALJ was required to use to reject Claimant's symptom testimony.  This dispute focuses primarily on the ALJ's consideration of Claimant's 2016 diagnosis of malingering, made by an examining psychologist, Dr. Cline, using symptoms validity testing.  AR 41 (citing AR 363– 64).  Claimant argues that, pursuant to the agency's Program Operations Manual ("POMS"), the ALJ may not consider the results of symptoms validity testing when making a finding of malingering.  ECF No. 11 at 12 (citing POMS DI 22510.006).

The POMS is a policy manual that provides guidance to the agency, not a source of judicially enforceable rules. *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003). Moreover, as the Government points out, the specific policy that Claimant references only forbids the purchase of symptoms validity testing. POMS DI 22510.006. It does not prohibit the ALJ from considering test results from an examining psychologist that are on the record. *See id*. In fact, the policy expressly states, "When the results of [symptoms validity testing] are part of the medical evidence of record, we consider them along with all of the relevant evidence in the case record." POMS DI 22510.006(D). Therefore, the ALJ did not err when she considered the results of Claimant's symptoms validity testing, which constitute evidence of malingering on the record. *See* AR 364.

### *Other Evidence Impacting Credibility Determination*

Additionally, as the Commissioner points out, evidence of malingering was not the only reason that the ALJ discounted Claimant's symptom testimony. For example, the ALJ discredited Claimant's testimony on the basis that it was inconsistent with other evidence of the record, including evidence of successful treatment and documented improvement of Claimant's back pain after his surgery. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (explaining that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). In her findings, the ALJ consistently cites to the record, demonstrating her analysis of Claimant's medical history and documented

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

symptoms since his back surgery in 2014. *See* AR 37–39. Her conclusion that Claimant's back pain improved after his surgery is supported by specific findings and citations to the record. For example, the ALJ explained:

> [P]rimary care notes in 2017 reflect mostly mental health complaints and few specific visits for back pain. Inconsistent with his testimony, [Claimant] did not indicate that he regularly had to lie down to relieve pain or th[at] he had difficulty sitting. (10F/9). In the most recent treatment notes of record, the claimant indicated he was only taking over the counter pain medication (Tylenol) (10F/9), and that the medication worked well for him (10/F5).

AR 39.

Additionally, the ALJ noted inconsistencies in Claimant's reporting of his symptoms and pain levels. For instance, in May of 2015, Claimant told his physician that, after his surgery, he had 75% pain relief with fentanyl patches, with no side effects related to balance or coordination. AR 38 (citing AR 579). However, about one month later, Claimant told his surgeon that his back symptoms had been increasing over the past three months, and that his pain rating was at a seven out of ten. *Id*. (citing AR 415). The ALJ also found that Claimant's medical record did not corroborate one alleged hospitalization. AR 40.

Given the evidence of malingering on the record and given the specific inconsistencies that the ALJ found in the record related to Claimant's symptoms, the ALJ discounted Claimant's testimony for specific and cogent reasons. Therefore, the ALJ did not err in discounting Claimant's testimony.

Claimant challenges several additional findings made by the ALJ in the process of weighing Claimant's credibility. ECF No. 11 at 15–20. However, as the Court already has concluded that the ALJ had specific and cogent reasons to discredit Claimant's symptom testimony, the Court need not consider those additional arguments.

## II. Weighing Medical Opinions

Claimant also argues that the ALJ erred when weighing medical opinions in this case. *Id*. at 10–11. Specifically, Claimant contends that the ALJ erred in discounting the medical testimony of treating physician Dr. Crank, which resulted in Dr. Crank's opinions receiving less weight than the medical opinions of non-examining physician Dr. O'Brien.

### *Harmless Error*

In response to Claimant's argument, the Commissioner claims that, even if the ALJ erred in discounting Dr. Crank's opinions, that error was harmless. ECF No. 12 at 18–19. A district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error is harmless where "it is inconsequential" to the ALJ's "ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). Here, the Commissioner asserts that both the RFC and Dr. Crank's opinion find that Claimant is capable of sedentary work. Therefore, the Commissioner argues that, even if the

ALJ had given Dr. Crank's medical opinion full weight, the opinion would not have changed the ALJ's ultimate determination of not disabled.

Claimant on the other hand argues that the decision to discount Dr. Crank's opinion was not harmless, as Dr. Crank made additional findings that may be inconsistent with the RFC. Specifically, Claimant points out that Dr. Crank concluded that Claimant had marked limitations in 11 basic work activities, including sitting, standing, walking, handling, and reaching. ECF No. 13 at 10–11 (citing AR 627). Claimant asserts that a person who has very significant limitations in sitting generally should receive a "sit/stand option" as a limitation in his or her RFC. *Id*. However, no such limitation is contained in Claimant's RFC. Similarly, even though Dr. Crank concluded that Claimant has marked limitations in handling and reaching, there are no limitations in Claimant's RFC related to handling and reaching. *Id*. Claimant maintains that, had the ALJ given Dr. Crank's entire medical opinion full weight, the medical opinion "would have likely compelled" a finding of disability. *Id*. at 11.

While Dr. Crank concluded that Claimant has marked limitations in his ability to perform numerous work-related functions, Dr. Crank's ultimate opinion, as indicated on the relevant medical form, is that Claimant is capable of sedentary work. AR 628. The medical form completed by Dr. Crank has a designated space in which Dr. Crank noted Claimant's limitations. Immediately below that space, the medical form asks the examining physician: "In your professional medical

opinion, what work level is the client capable of performing in a regular predictable manner despite their impairment?" *Id*. at 627–28. Dr. Crank concluded that Claimant, "despite" his impairment, could predictably and regularly perform sedentary work. *Id*. at 628. The language in Dr. Crank's medical documentation indicates Dr. Crank evaluated Claimant's limitations, and, in light of those limitations, concluded that he could perform sedentary work. *See id*. at 627–28.

Because both Dr. Crank and the ALJ concluded that Claimant can perform sedentary work, any alleged error that the ALJ made in weighing Dr. Crank's medical opinions was harmless.

**Weighing Dr. Crank's Opinion**

In the alternative, the Court finds that the ALJ properly weighed the medical opinion testimony by providing specific, legitimate reasons for giving Dr. Crank's testimony less weight than Dr. O'Brien's testimony. The general rule is that the opinions of treating physicians are owed greater weight than those of examining physicians. 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, examining sources generally are owed greater weight than non-examining sources. *Id*. However, when a treating physician's or an examining physician's opinion is contradicted, the ALJ may discount that opinion if the ALJ lays out specific and legitimate reasons for doing so. *Garrison*, 759 F.3d at 1012. When discounting medical opinions, the Ninth Circuit has clarified that the ALJ may not state, vaguely, that

the physician's conclusions are unsupported by the record, or by "sufficient objective findings." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). "To say that medical opinions are not supported by sufficient objective findings or are contrary to preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Id*. at 421. Rather, when explaining the reasons for discounting a treating physician's or examining physician's opinions, the ALJ "must set forth his own interpretations and explain why they, rather than the doctor[']s are correct." *Garrison*, 759 F.3d at 1012 (citation omitted). For instance, an ALJ may discount a physician's medical opinion when, unbeknownst to the physician, the physician based his or her opinions on information that is contradicted or undermined by the record. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

Here, Claimant argues that the ALJ improperly discounted Dr. Crank's opinion. Because the ALJ discredited Dr. Crank's evaluation of Claimant, the medial opinions of Dr. O'Brien, a non-examining physician, received more weight than Dr. Crank's opinions. As Dr. Crank was a treating physician and Dr. O'Brien was a non-examining physician, the ALJ was required to lay out specific and legitimate reasons for giving Dr. O'Brien's opinions more weight than Dr. Crank's opinions.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

Assuming *arguendo* that Dr. Crank's conclusions are inconsistent with the ALJ's opinion, which this Court does not concede that they are, the ALJ provided specific and legitimate reasons for departing from Dr. Crank's conclusions and for giving Dr. O'Brien's opinions more weight. First, the ALJ concluded that Dr. Crank relied on Claimant's report of seeking emergency room treatment in 2016 for back pain. AR 42. Dr. Crank's negligible notes indicate that Claimant received emergency room treatment for back pain in 2016. AR 626. However, the ALJ correctly found that Claimant did not go to the emergency room for back pain in 2016. Rather, that visit was for "concerns other than back pain." AR 42. The ALJ clearly explained that she was discounting Dr. Crank's medical opinion, in part, because it was based on information that expressly contradicted the record. *Id*. This reason is specific and legitimate, and thus provides an appropriate basis for discounting Dr. Crank's testimony.

Additionally, the ALJ found that Dr. Crank's opinion was "inconsistent with the overall record, which, as discussed at finding #5, reflects progressive improvements in the claimant's back pain after surgery in March 2014." *Id*. Claimant argues that this conclusion is not specific enough to comply with the standard of "specific and legitimate reasons" for discounting a treating physician's medical opinions. *See* ECF No. 13 at 9–10. However, the ALJ references her finding at number five, and that finding reflects a thorough review of the record. It also contains an explanation as to why the ALJ concluded that Claimant's back

pain had improved. *See* AR 37–38. In finding number five, the ALJ "set forth her own interpretations" and explained why those interpretations support her conclusion that Claimant's back pain had improved. *See Garrison*, 759 F.3d at 1012. Therefore, the ALJ's findings regarding back pain provide a "specific and legitimate reason" for discounting Dr. Crank's testimony.

Assuming *arguendo* that the ALJ departed from Dr. Crank's opinion in forming Claimant's RFC, the ALJ properly discounted Dr. Crank's medical opinion by providing specific and legitimate reasons for doing so.

## CONCLUSION

For the foregoing reasons, the ALJ did not err when she discredited Claimant's testimony, nor did she err in her evaluation of medical opinion testimony in this matter. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

3. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close this case**.

**DATED** March 18, 2020.

           *s/ Rosanna Malouf Peterson*
           ROSANNA MALOUF PETERSON
           United States District Judge